[Crim. No. 195.    Fourth Appellate District.—September 21, 1936.]

THE PEOPLE, Respondent, v. J. W. MARTIN, Appellant.

Kenneth G. Avery for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

MARKS, J.—This is an appeal from a judgment pronounced upon defendant after his conviction of petit theft, with two prior convictions of felonies which he admitted, and from the order denying his motion for new trial.

Defendant was a prospector engaged in mining tailings near the San Joaquin River at Friant in Fresno County, California. L. H. Kahrt was postmaster and conducted a store in Friant at which defendant traded. Kahrt bought gold from miners.

On the evening of May 2, 1936, Kahrt had about $160 in gold in two bottles in a show case in his store. The gold was last seen by Mrs. Kahrt at about four o'clock and by Mr. Kahrt at about five o'clock on the afternoon of May 2d. Early next morning it was gone. On May 2d defendant spent about thirty minutes in the store purchasing groceries immediately after six o'clock and was alone there for a few minutes. It is probable that he was the only customer in the store after four o'clock. The store was closed and the doors and windows fastened shortly before eight o'clock. They were in the same condition when the store was opened next morning and the theft was discovered.

About one-half ounce of gold amalgam in one piece had been in one of the two bottles. On May 9th defendant sold a little less than one-half ounce of gold amalgam to a dealer in Friant. When sold the amalgam had the appearance of being the fractions of a larger piece that had been pounded and broken up. Shortly before his arrest he shipped gold, probably in excess of five ounces, from Fresno to the United States Mint in San Francisco. Prior to his making this shipment he had offered for sale in excess of six ounces of gold in Mariposa. He told one witness there that he had obtained the gold in a mining district about seventeen miles from Mariposa, and another that he had mined it along the Kings River. He explained to another miner in Friant his possession of an unusual quantity of gold by saying that he had followed a third miner one night and observed him

dig a hole and bury something; that he uncovered the hole and found about $150 in gold. These statements were all made after the theft and before his arrest.

At the time of his arrest defendant gave another miner the receipt for the gold shipment from Fresno. After his arrest he told the arresting officer that he had never shipped any gold from Fresno.

Defendant testified in his own behalf to the effect that the gold sold by him was obtained by his own labors in working gravel beds along the San Joaquin River near Friant; that he had made the false statements about where he found the gold because he did not want anyone to know of his good ground so that no other miners would move in on him; that he denied shipping the gold from Fresno because he considered that fact and the good results of his labor the business of no one but himself.

■ Upon this state of the record defendant urges that the evidence is insufficient to support the verdict and judgment. He argues that the evidence is entirely circumstantial; that it does not prove him guilty beyond a reasonable doubt; that the circumstances relied upon by the prosecution are just as consistent with his innocence as with his guilt.

We have the following elements of the crime sufficiently established by the evidence: (1) that the gold was stolen; (2) that defendant had the opportunity to commit the crime and there is some evidence, though it is not conclusive, justifying the inference that he had the only opportunity to commit it; (3) his possession, after the theft, of gold in value approximating that of the stolen gold; (4) admittedly false and conflicting statements made by him as to how and where he obtained this gold; (5) attempting to conceal the shipment of the gold from Fresno by giving his receipt to another miner so that the officers would not find it, and by falsely stating that he had shipped no gold from Fresno.

■ False statements made by a defendant after a crime has been committed are competent evidence against him as tending to prove a consciousness of guilt on his part. (*People* v. *Garcia,* 83 Cal. App. 463 [256 Pac. 876].) Also an attempt to suppress adverse evidence may be considered by the jury as a circumstance pointing to guilt.

When we measure the sufficiency of the evidence by recent rules laid down by the Supreme Court we cannot disturb

the judgment. In the case of *People* v. *Latona*, 2 Cal. (2d) 714 [43 Pac. (2d) 260], it was said:

"Guilty connection with the commission of a crime may be established by circumstantial evidence (*State* v. *Cristani*, 192 Iowa, 615 [185 N. W. 111]; *People* v. *Kneiling*, 127 Cal. App. 151 [15 Pac. (2d) 561]), and the jury had before it many circumstances from which they could draw proper legal inferences of guilt. . . . As was said in *People* v. *Martinez*, 20 Cal. App. 343, 345 [128 Pac. 952], if 'the circumstances reasonably justified the conclusion of the jury as expressed in their verdict, and even though this court were of the opinion that such circumstances might be reasonably reconciled with the innocence of defendant, such fact does not warrant interference with the determination of the jury.' The case just cited has been approved in the following authorities: *People* v. *Strauss*, 75 Cal. App. 447–455 [243 Pac. 67]; *People* v. *Medalgi*, 94 Cal. App. 543–545 [271 Pac. 552]; *People* v. *Mitsunaga*, 91 Cal. App. 298 [266 Pac. 1020]; *People* v. *Page*, 86 Cal. App. 148–156 [260 Pac. 591]; *People* v. *Hector*, 96 Cal. App. 102–106 [273 Pac. 843]; *People* v. *Frahm*, 107 Cal. App. 253–266 [290 Pac. 678]. . . . The right to draw proper inferences from the evidence is a function of the jury; and as long as its conclusions do not do violence to reason, an appellate court is not permitted to substitute its finding of the ultimate fact for that reached by the constitutional as well as the statutory arbiter thereof."

Defendant complains of the refusal of the trial judge to give the following instruction requested by him:

"You are instructed that mere opportunity of the defendant to commit the crime charged, unless it excludes all reasonable opportunity for its commission by another, is insufficient to justify a verdict of guilty."

The trial court gave a very careful instruction on circumstantial evidence which concluded with the admonition that the jurors should not convict defendant unless they believed "from the evidence that such facts and circumstances pointing to the guilt of the defendant have been proved beyond a reasonable doubt, and are of such a character as to exclude every reasonable hypothesis except that the defendant is guilty."

We have reached the conclusion that the quoted portion of the instruction given, sufficiently stated the rule attempted to be set forth in the refused instruction. In saying this we have merely assumed, without holding, that the requested instruction contains a legally correct statement of the law.

■ Defendant also complains of the refusal of the trial court to give a proffered instruction upon the question of reasonable doubt. The jury was properly instructed on that subject and the trial court was not required to give a second instruction upon it. (Secs. 1096, 1096a, Pen. Code.)

The judgment and order are affirmed.

Barnard, P. J., and Jennings, J., concurred.