[Crim. No. 3437.   Second Dist., Div. Two.—April 23, 1941.]

THE PEOPLE, Respondent, v. RUSSELL E. NOBLES, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, Eugene M. Elson, Deputy Attorney-General, for Respondent.

MOORE, P. J.—Appellant was accused by information of the district attorney of eleven felonies. By counts 1, 4, 7 and 10, he was charged with statutory rape, and was convicted of attempted rape under all four counts. By counts 2, 3, 6 and 9, he was accused of violating section 288 of the Penal Code and was convicted on those four counts. By counts 5, 8 and 11, he was accused of incest but of these he was acquitted.[1] Defendant waived trial by jury. His motion for a new trial having been denied, judgment was entered sentencing appellant to the state prison at San Quentin for the term prescribed by law on each of the eight convictions. But the language of the judgments is such that appellant is required to serve only four consecutive terms. Defendant appealed from the order denying his motion for a new trial and from the judgment of the court.

The contentions made on appeal are: (1) error of the court in admitting certain testimony, and (2) insufficiency of the evidence to support the judgment.

It will not be necessary to unfold the sordid details of a series of acts committed by appellant in his association with two girls, one of whom was his own daughter. From the brief résumé here recorded, one may readily perceive the loathsome facts, unhappily if not unwillingly recited by the two children to the trial court.

In the late fall of 1939, the wife of appellant, step-mother of Betty Nobles, was holding a revival meeting in a tent at Sunshine Acres. Bessie Cook, 15 years of age, visited the Nobles family and slept in a tent with Betty. Appellant slept in a house opposite the sleeping quarters of Betty and her friend. On one occasion, while Bessie was alone in the tent, appellant visited her as she lay in bed and, to abbreviate the story which was extended by reason of her unwillingness, she testified that at that time appellant pulled down her panties, touched her genital organs with his private parts and left ''wet'' upon her garment. This was sufficient to convince the trial court that appellant at least made an attempt at sexual intercourse with this girl. Bessie testified that on a number of occasions, he occupied the same bed with Betty and herself.

The story of Betty June, who was in her 13th year at the time of the tragical occurrences, was that while at Sunshine Acres she lived in a one-room house and slept alone in the church tent; that some unusual things happened before Thanksgiving of 1939; that appellant required her to enter his bed on a number of occasions where acts occurred violative of section 288 of the Penal Code and by reason of his exercise of his genital organs upon her she suffered some pain in her private parts. The last occurrence in the series took place about the 11th of April, 1940, when his former conduct was repeated while in bed with his daughter. A physician testified that the hymen of Bessie May Cook had suffered a rupture and that the same organ of Betty June was slightly ruptured.

▮▮ Over objection the court permitted deputy sheriff Bess Bailey to testify to the conversation she had had with Betty Nobles at the time of the commencement of her investigation of the charges. Prior to the testimony of Miss Bailey, an attempt had been made to create an inference that Betty June had given her testimony against her father in revenge for alleged acts of unkindness on his part. In admitting the recitals of the deputy sheriff, it was made clear by the court that such testimony was not received for the purpose of proving the facts which had been told to the witness by Betty June but for the limited purpose of refuting the suggestion that Betty had fabricated her testimony out of revenge. It is a well known rule that, under ordinary

circumstances, prior extrajudicial statements of a witness consistent with his testimony on the stand will not be admitted for the purpose of bolstering such testimony. But the exception to that rule is that such evidence is proper to rebut inferences created by the cross-examination of the witness and to rehabilitate his evidence following attempts to impeach him by endeavoring to show that his testimony is actuated by base or ulterior motives, or that his testimony in court is of recent fabrication. (*Davis* v. *Tanner*, 88 Cal. App. 67 [262 Pac. 1106]; *Clark* v. *Dalziel*, 3 Cal. App. 121, 124 [84 Pac. 429]; 3 Wigmore on Evidence, 2d, p. 1766.)

In view of the limitation placed upon the testimony of Miss Bailey at the time it was admitted, it was not inadmissible for the reason that it was introduced and received solely to prove that her state of mind, on the date anterior to the trial with respect to the subject under consideration, was the same as that disclosed at the trial and that her testimony was not a fabrication. After receiving the testimony of the deputy sheriff for the purpose above stated, it was for the trial court to determine whether or not Betty June had fabricated her story out of false tissues to injure her father. The court impliedly found that she had not. The testimony of the deputy sheriff was appropriate and competent for the purpose of assisting the court to derive such finding.

Appellant contends that he suffered prejudicial error when the court allowed the district attorney, over objection, to refresh the recollection of Bessie Cook by reading to her, while on the stand, a portion of her testimony, given at the preliminary hearing. But appellant cites no page of the record where this asserted error occurred and it should not for that reason be considered on appeal. (*People* v. *Gidney*, 10 Cal. (2d) 138 [73 Pac. (2d) 1186]; *People* v. *Balmain*, 16 Cal. App. 28 [116 Pac. 303].) We may say, however, that the witness could not remember before her mind was refreshed, and answered that she could not remember after her mind had been refreshed. Consequently no prejudice was suffered. But, in view of the apparent reversal of the witness from her testimony at the preliminary hearing, the district attorney was within his rights to remind her of her former testimony. (*People* v. *Crawford*, 24 Cal. App. 396 [141 Pac. 824].)

With reference to the claim of the insufficiency of evidence to support the judgment, the *résumé* heretofore recited should be sufficient to demonstrate that the proof was ample to support the conclusion of the trial judge. To extend the story by detailed description of each incident could serve no end except to enlarge the reader's .disgust of the species *sapiens*. There is no similarity between the facts of this case and those of *People* v. *Adams,* 14 Cal. (2d) 154 [93 Pac. (2d) 146]. In that case the trial court erroneously permitted the mother of five year old Cornelia to give a detailed statement of alleged occurrences two years anterior to the trial, which she asserted had been related to her by the child at or about the time of the first alleged incident. The child's testimony was wholly uncorroborated, to say nothing of many discrepancies, inconsistencies and improbable statements in her story. In fact she was not sworn because her age rendered her incompetent. Her friend, Janet, age 5, satisfied the trial court that she had been coached preparatory to giving her testimony. She was unable to grasp intelligently the purport of simple qualifying questions. In view of her utter incompetency, offering her as a witness ''borders on prejudicial misconduct'' for the reason that ''her appearance on the witness stand constituted an implied assurance on the part of the prosecution that her testimony would corroborate that of Cornelia respecting the particular misconduct of defendant''. The entire atmosphere of that case reeks with the aroma of vengeful parents who sought retribution against a man whom they conceived to have wronged their child.

In the case at bar, the principal witness is appellant's own daughter, 13 years of age at the time of the trial, who displayed no zeal to give incriminating testimony against her father. The record is wholly void of any declaration on the part of Betty June that she would seek revenge against her father for punishment he had administered to her. She was supported by splendid corroboration in the person of her friend, Bessie Cook, 15 years of age, who was unwilling, if not hostile to the prosecution.

Certainly, in view of the evidence contained in the record, this court would not be warranted in reversing the judgment unless it be made clearly to appear that upon no hypothesis whatever is the evidence sufficient. (*People* v. *Gil-*

*bert,* 26 Cal. App. (2d) 1 [78 Pac. (2d) 770]; *People* v. *Kneiling,* 127 Cal. App. 151 [15 Pac. (2d) 561]; *People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778].)

Judgment and order affirmed.

Wood, J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1941. Curtis, J., voted for a hearing.